CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

NICHOLAS M. PARKER (CABN 297860)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7368
    Nicholas.Parker3@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>BRAYAN MARTINEZ,<br><br>    Defendant. | CASE NO. 3:25-CR-00043-CRB<br>CASE NO. 3:19-CR-00381-CRB-5<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date:   November 7, 2025<br>Hearing Time:  12:00 p.m.<br>Courtroom:      6 (17th Floor)<br>Judge:           Hon. Charles R. Breyer |

## I.    INTRODUCTION

On the evening of January 3, 2024, San Francisco Police Department (SFPD) officers arrested the defendant after witnessing him sell drugs on the streets of the Tenderloin. In a subsequent search incident to arrest, the officers found distribution quantities of fentanyl, methamphetamine, and cocaine base on the defendant, along with indicia of drug sales, including $171 in cash in varying denominations as well as empty plastic baggies and a digital scale.

This is not the defendant's first time facing federal drug charges. Nor is it his second. Indeed, the defendant's arrest in January 2024 was at least his *fourth* for selling drugs in San Francisco since April 2019. Courts, including this Court, have shown the defendant leniency in the past, and the defendant has responded by recidivating time and time again. At this point, it appears the only way to prevent the

defendant from illegally returning to the United States to sell drugs in the Tenderloin is to incarcerate him. The government therefore submits this sentencing memorandum to advise the Court why a sentence of 60 months in custody, to be followed by four years of supervised release, is a reasonable disposition of these cases. The U.S. Probation Office has recommended a custodial sentence of 18 months on the supervised release violations, to run concurrent to whatever sentence is imposed in the new case. *See* Case No. 3:19-cr-00381 CRB ("2019 Case"), Dkt. 454.

## II.    DISCUSSION

### A.    Offense Conduct

On the evening of January 3, 2024, SFPD officers were conducting a surveillance operation in the Tenderloin District of San Francisco, which (as the Court knows well) is a densely populated, high-crime area in which drug sales are common, particularly at night. One of the SFPD officers was on the roof of a building on the south side of Turk Street between Larkin and Hyde Streets. He was using binoculars to observe what was happening on the north sidewalk of the 400 block of Turk Street, and he was in radio communication with a team of SFPD officers, some of whom were in patrol cars on the street. *See* Case No. 3:25-cr-00043 CRB ("2025 Case"), Dkt. 15-1 at ECF p. 6; Dkt. 18-1 at ¶¶ 4, 6.

Shortly after 9:40 p.m., the surveilling SFPD officer watched as the defendant engaged in what appeared to the officer to be a hand-to-hand drug transaction with an unknown buyer. The officer then used his hand-held radio to provide his SFPD colleagues with a location for, and description of, the defendant and watched as his colleagues detained and arrested the defendant mere feet from where the drug deal had occurred. In a search incident to arrest, SFPD officers found distribution quantities of fentanyl, methamphetamine, and cocaine base, as well as $171 in cash and indicia of drug sales (e.g., empty plastic baggies and a digital scale), on the defendant's person. All of the drugs later tested positive in a laboratory for those substances. *See* 2025 Case, Dkt. 15-1 at ECF pp. 6–7; Dkt. 18-1 at ¶¶ 7–11.

### B.    Background and Procedural History

<u>2019 Case.</u> The defendant is no stranger to federal drug charges. In August 2019, he was charged in federal court with conspiracy to distribute and possess with intent to distribute five grams or more of methamphetamine, heroin, cocaine base, and cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B). *See* 2019 Case, Dkts. 1 (complaint), 44 (indictment). In that case, like this one, the defendant

was accused of selling drugs on the streets of the Tenderloin. *See* 2019 Case, Dkt. 183 (government's sentencing memo). The defendant eventually agreed to plead guilty to a superseding information charging him with one count of conspiracy to distribute and possess with intent to distribute methamphetamine, heroin, and cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C). *See* 2019 Case, Dkt. 161. In May 2020, this Court imposed a below-Guidelines sentence of time served, which amounted to approximately nine months in custody, and placed the defendant on a three-year term of supervised release. *See* 2019 Case, Dkt. 213 (judgment).

The defendant was deported, but he soon returned—not only to the United States but to dealing drugs in the Tenderloin: he was arrested in San Francisco on drug charges in March 2022, having sold methamphetamine to an undercover officer. *See* 2019 Case, Dkt. 388 (gov't revocation sentencing memo). At the time of his arrest, the defendant also possessed other drugs for sale, including fentanyl, heroin, and cocaine. *See id.* On the basis of that conduct, this Court revoked the defendant's supervised release in March 2023 and sentenced him to 15 months in custody—the low-end of the applicable Guidelines range—to be followed by three years of supervised release. *See* 2019 Case, Dkt. 390 (revocation judgment).

2025 Case. The defendant completed his sentence and was again removed from the United States in May 2023. Again, he soon returned. And again, he was quickly re-arrested for selling drugs in the Tenderloin. The defendant initially came into federal custody on a warrant issued by this Court in January 2024 for alleged violations of conditions of his supervised release. *See* 2019 Case, Dkt. 404. Rather than resolve yet another case against the defendant on a mere revocation proceeding, however, the government obtained an Indictment charging the defendant with one count of possession with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi). *See* 2025 Case, Dkt. 1.

On October 10, 2025—after filing and later withdrawing a motion to suppress the drugs seized upon his January 2024 arrest, *see* 2025 Case, Dkts. 14, 28—the defendant pleaded "open" to the sole count in the Indictment. *See* 2025 Case, Dkt. 33. At the same time, he admitted five violations of the conditions of his supervised release, most of which relate either to the conduct charged in the 2025 Case or to the defendant's illegal reentry into the United States. *See* 2019 Case, Dkt. 452.

The defendant has been in continuous state or federal custody since his arrest on January 3, 2024.

C. **Sentencing Guidelines Calculation**

1. 2025 Case

The government calculates the Sentencing Guidelines as follows:

- **Base Offense Level** [U.S.S.G. § 2D1.1(a)(5), (c)(8)]:   **24**
    - 279.35 kg converted drug weight
        - 70.4 g (net) fentanyl * 2.5 kg = 176 kg
        - 27.91 g (net) methamphetamine * 2 kg = 55.82 kg
        - 13.31 g (net) cocaine base * 3.571 kg = 47.53 kg
- **Acceptance of Responsibility** [U.S.S.G. § 3E1.1]:   **-3**
- **Total Offense Level**:   **21**

The government agrees with the Probation Office that the defendant has six criminal history points, placing him in Criminal History Category III. *See* 2025 Case, Dkt. 35 [PSR] ¶¶ 6–10. A total offense level of 21, at Criminal History Category III, yields an advisory sentencing range of 46 to 57 months of imprisonment. *See* U.S.S.G. ch. 5, pt. A. However, the charge to which the defendant pleaded guilty carries a mandatory minimum prison sentence of 60 months, and the defendant's criminal history renders him ineligible for relief. *See* 21 U.S.C. § 841(a)(1) and (b)(1)(B); U.S.S.G. § 5C1.2(a)(1).

2. 2019 Case

The government agrees with the Probation Office that at least one of the charges alleged in the Form 12 petition is a Grade A violation. *See* 2019 Case, Dkt. 454 at 2; U.S.S.G. § 7B1.1(a)(1) (defining Grade A violations to include, among other things, "conduct constituting … a federal, state, or local offense punishable by a term of imprisonment exceeding one year that is … a controlled substance offense"). The government further agrees with the Probation Office's determination that the defendant was in Criminal History Category II at the time of sentencing in the 2019 Case. *See* 2019 Case, Dkt. 454 at 2; Dkt. 183 at 3. Accordingly, the Guidelines range applicable to the defendant in the revocation proceeding is 15–21 months. *See* 2019 Case, Dkt. 454 at 2; Dkt. 183 at 3; U.S.S.G. § 7B1.4(a).

D. **Applicable Law**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See United States v. Carty*, 520

F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Sentencing Guidelines. *See id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *See id.* at 991–93.

In arriving at the appropriate sentence for Mr. Martinez, and in light of 18 U.S.C. § 3553(a), the Court should consider these factors applicable to this case, among others:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)  the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5)  the need to provide restitution to any victims of the offense.

With respect to the defendant's violations of supervised release, the Court "'should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.'" *United States v. Jones*, 696 F.3d 932, 936 (9th Cir. 2012) (quoting U.S.S.G., Ch. 7, Pt. A(3)(b) (2010)). As the Sentencing Commission has explained, these are the relevant considerations because "the sentence imposed upon revocation [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision, leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense." U.S.S.G., Ch. 7, Pt. A(3)(b) (2021). Of course, "a more serious violation constitutes a more serious breach of the court's trust," and should be punished accordingly. *Jones*, 696 F.3d at 936; *see also United States v. Simtob*, 485 F.3d 1058, 1063 (9th Cir. 2007) (explaining that, if the "nature and severity of the underlying offense were removed from the equation altogether," a court could not "punish the violator for the violator's full breach of trust").

**E.     Recommended Sentence and Section 3553(a) Factors**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court impose the mandatory-minimum sentence of 60 months in custody, to be followed by four years of supervised release, in the 2025 Case. The government further recommends a concurrent sentence of 18 months in custody in the 2019 Case, with no additional supervised release to follow. Such a sentence would be sufficient, but not greater than necessary, to reflect the purposes of sentencing, in consideration of the nature of the offense, the history and characteristics of the defendant, and the defendant's breach of the Court's trust. In addition, the Court should order the defendant to forfeit his interest in the following items seized from him upon his arrest in January 2024: $171 in U.S. currency, one cell phone, and one digital scale. Given the nature of this offense, and the defendant's demonstrated inability to comply with court-ordered conditions, the Court should also include the following expanded search condition as part of the defendant's supervised release to serve and further the interests of deterrence and rehabilitation:

Special Condition (Searches)

> The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

The defendant is a recidivist drug dealer with a long history of selling drugs in the Bay Area. He was first arrested on drug charges in San Francisco in June 2017, when he was 19. *See* PSR ¶ 11. Since then, he has been arrested on suspicion of selling drugs in either San Francisco or Oakland *at least nine more times*: in November 2017 (Oakland), January 2018 (twice, both in San Francisco), April 2018 (San Francisco), April 2019 (San Francisco), June 2019 (Oakland), December 2020 (San Francisco), March 2022 (San Francisco), and January 2024 (San Francisco). *See* PSR ¶¶ 6–7, 12–15, 18–19, 21. Four of those arrests led to convictions, including the conviction in this case. *See* PSR ¶¶ 6–8, 15. Indeed, since his initial federal conviction before this Court in May 2020, the defendant has now *twice* come back to San Francisco and *twice* been arrested for selling drugs in the Tenderloin—the same conduct underlying his original conviction.

What is more, the defendant has shown no ability whatsoever to follow court orders or to abide by the terms of court-imposed supervision. He has illegally re-entered the United States, resumed dealing drugs, and failed to report to the Probation Office—all in violation of the conditions of his supervised release—multiple times following his initial conviction in federal court. Indeed, this will be the defendant's *second* revocation of supervised release. Relatedly, but separately, the defendant has violated conditions of state probation at least twice. *See* PSR ¶¶ 7, 15.

### III.  CONCLUSION

For the foregoing reasons—and in full consideration of the applicable Sentencing Guidelines, the goals of sentencing, and the factors set forth in 18 U.S.C. § 3553(a)—the government respectfully requests that the Court sentence Mr. Martinez (i) to 60 months in custody, to be followed by four years of supervised release, in the 2025 Case; and (ii) to 18 months in custody in the 2019 Case, with such terms to run concurrent to one another. The government also requests that the Court include the expanded search condition set forth above among the defendant's conditions of his supervised release. Finally, the government asks that the Court order Mr. Martinez to forfeit his interest in, among other things, $171 seized from him on the day of his arrest and pay a mandatory special assessment of $100.

DATED:  November 6, 2025                                      Respectfully submitted,

                                                              CRAIG H. MISSAKIAN
                                                              United States Attorney


                                                               /s/ *Nicholas Parker*
                                                              NICHOLAS M. PARKER
                                                              Assistant United States Attorney